CITY OF DAYTON, Appellee,

v.

SHEIBENBERGER, Appellant.

[Cite as *Dayton v. Sheibenberger* (1996), 115 Ohio App.3d 529.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15771.

Decided Nov. 8, 1996.

**530**

*J. Anthony Sawyer*, Director of Law, *John J. Scaccia*, Chief City Prosecutor, and *Edward B. Neuman*, Assistant City Prosecutor, for appellee.

*Paul R. Leonard*, for appellant.

FREDERICK N. YOUNG, Judge.

Thomas R. Sheibenberger ("Sheibenberger") was arrested for aggravated menacing and unlawful discharge of a firearm on August 15, 1983. The charges were withdrawn and the case was dismissed in September 1983. On August 28, 1984, Sheibenberger was arrested for improperly handling a firearm in a motor vehicle. He pled guilty to the charge on September 13, 1984. The Dayton Municipal Court fined Sheibenberger $100 plus court costs and placed him on unsupervised probation for one year. Sheibenberger paid his fine in full and completed his probation.

Subsequently, on May 13, 1995, Sheibenberger filed an application to seal the record of his conviction pursuant to R.C. 2953.32 and to expunge the records of the two dismissed charges pursuant to R.C. 2953.52. In order to have his conviction sealed under R.C. 2953.32, Sheibenberger had to qualify as a "first offender." R.C. 2952.32 provides that only a "first offender" is eligible to have his or her record of conviction sealed. R.C. 2953.52 does not contain a similar requirement for the sealing of records regarding dismissed charges. To determine whether Sheibenberger qualified as a "first offender" under R.C. 2953.32, the Adult Probation Department prepared a report delineating Sheibenberger's record of convictions for the trial court. The report revealed Sheibenberger's previously mentioned conviction along with five convictions for violations of the Dayton Housing Ordinances.

Because Sheibenberger had been convicted on five other occasions, the Adult Probation Department concluded that Sheibenberger was not a "first offender" and recommended that Sheibenberger's request to have his conviction record sealed be denied. On June 20, 1995, the Dayton Prosecutor's Office also filed an

objection to the sealing of Sheibenberger's conviction record and included an objection to the sealing of his dismissed charges record. Sheibenberger filed a memorandum in opposition to the objection on June 27, 1995.

On August 30, 1995, the court ordered the parties to submit briefs on the matter. Sheibenberger filed his brief on September 25, 1995, and the prosecutor's office filed a brief in opposition on September 26, 1995. Sheibenberger filed his response on October 6, 1995. On February 1, 1996, the municipal court denied Sheibenberger's application to seal his conviction and motion to expunge his record of the dismissed charges. The court based its denial of his application to seal his conviction record on its finding that Sheibenberger did not meet the statutory definition of a "first offender" under R.C. 2953.32. The court denied his application to expunge his record of the dismissed charges under R.C. 2953.52 because the court found that the "government's interest in having access to the applicant's record of arrests and convictions substantially outweighs the applicant's privacy interests." Sheibenberger filed his notice of appeal on February 28, 1996.

## I

Sheibenberger presents two assignments of error for this court's review. In his first assignment of error, Sheibenberger argues that he meets the statutory definition of a "first offender." R.C. 2953.32(A)(1) governs the sealing of conviction records. It provides:

"Except as provided in section 2953.61 of the Revised Code, a *first offender* may apply to the sentencing court * * * for the sealing of the record of conviction, * * * at the expiration of one year after his final discharge if convicted of a misdemeanor." (Emphasis added.)

R.C. 2953.31(A), which defines the term "first offender," is to be read in tandem with R.C. 2953.32(A)(1). The term "first offender" is defined as follows:

" 'First offender' means anyone who has been convicted of an offense in this state or any other jurisdiction, and who previously or subsequently has not been convicted of the same or a different offense in this state or any other jurisdiction. * * *

"For purposes of, and except as otherwise provided in, this division, a conviction for a minor misdemeanor, a conviction for a violation of any section in Chapter 4511., 4513., or 4549. of the Revised Code, *or a conviction for a violation of a municipal ordinance that is substantially similar to any section in those chapters,* is not a previous or subsequent conviction. A conviction for a violation of section 4511.19, 4511.192, 4511.251, 4549.02, 4549.021, 4549.03, 4549.042, or 4549.07, or sections 4549.41 to 4549.46 of the Revised Code, *or a conviction for a*

*violation of a municipal ordinance that is substantially similar to any of those sections,* shall be considered a previous or subsequent conviction." (Emphasis added.)

The Revised Code chapters and sections that are specifically mentioned in the above-quoted section all relate to traffic or motor vehicle violations. The legislature designated which traffic and motor vehicle violations it found are minor and which it determined are more serious. The legislature pronounced that the less serious traffic and motor vehicle violations would not constitute a previous or subsequent conviction and the more serious would constitute a conviction for the purposes of determining whether an individual is a "first offender."

Sheibenberger asserts that, because the housing code is a municipal ordinance, we are to consider to which specifically listed traffic violations are housing violations more "substantially similar" in order to ascertain whether housing violations are convictions which will bar the sealing of his conviction record. Sheibenberger contends that housing convictions are more substantially similar to the traffic violations which are not convictions for purposes of defining a "first offender." Those violations which do not constitute a conviction for purposes of defining a "first offender" are failing to obey traffic devices, tampering with traffic control devices, willful or wanton disregard for safety on highways, failing to obey speed limits, failing to obey speed limits in school zones, being an intoxicated pedestrian on a public highway, operating an unsafe motor vehicle, failing to obey equipment requirements on motor vehicles, failing to wear a seat belt, resisting an officer, and using unauthorized license plates. Sheibenberger argues that this category of violations is substantially similar to housing violations because they both relate to safety—the traffic violations concern safety requirements on motor vehicles and the housing violations concern the safety of homes and buildings.

Sheibenberger further argues that the crimes which do constitute convictions for purposes of the statute are dissimilar to his housing convictions because those crimes all involve either fraud or theft or a high likelihood of serious physical harm. Those violations which do amount to a conviction for purposes of the statute are driving under the influence of alcohol, operating a vehicle while under a license suspension, drag racing, failing to stop after an accident, selling or possessing master car keys for illegal purposes, tampering with an odometer, selling a device to affect an odometer, operating a vehicle with the odometer disconnected, selling a vehicle with a tampered odometer, and failing to disclose true and complete odometer readings. Sheibenberger maintains that although some housing violations may involve dangerous situations, they are less likely

than those more serious motor vehicle violations listed in the statute to result in great physical harm to the public.

The municipal court performed its analysis in the same manner. The municipal court considered to which traffic violations are housing violations more substantially similar. The court stated:

"If it is determined that housing violations are 'substantially similar to any section in those Chapters [referring those R.C. Chapters on traffic violations which do not constitute convictions], then they may not be considered as a previous or subsequent conviction for the purpose of determining whether an individual is a 'first offender.' "

After the court compared the substance of the housing ordinances in question with the two categories of traffic offenses, the court held "that the housing violations are not 'substantially similar' to the offenses defined in those Chapters [the ones which are not convictions for purposes of the statute]." Therefore, the court concluded that "the housing violations qualify as subsequent convictions."

We decide that the standard the trial court used is incorrect and that the trial court and Sheibenberger have misconstrued the statute. We believe that the "substantially similar" comparison was not intended to be used in this context. Rather, we are of the opinion that the "substantially similar" comparison was intended to apply only to violations of municipal traffic and motor vehicle ordinances.

R.C. 2953.31, which defines the term "first offender," was amended in 1984. Prior to 1984, it defined a " 'first offender' as anyone who had not been convicted of *any* offense." (Emphasis added.) *State v. Yackley* (1989), 43 Ohio St.3d 181, 182, 539 N.E.2d 1118, 1119–1120. The legislature apparently decided to amend that definition of a "first offender" because its application in certain situations had unfair consequences. See, *e.g., Chillicothe v. Herron* (1982), 3 Ohio App.3d 468, 469, 3 OBR 549, 550–551, 445 N.E.2d 1171, 1172–1173. Courts prior to that amendment felt constrained by the definition of a "first offender" and applied it as it was written. The courts construed the words "any offense" literally to mean any and all offenses including minor traffic offenses. This created unjust results because relatively minor convictions, such as speeding violations, operated to bar the sealing of conviction records.

To correct this inequity in the former statute, the legislature specifically delineated in its amended definition of "first offender" those minor traffic offenses which would not bar the sealing of records and those more serious traffic violations which would bar the sealing of records. The legislature also recognized that municipalities often adopt traffic rules which are identical or substantially similar to those the state has set forth in the Revised Code. Because it would be

534

impractical to try to list all of those municipal ordinances, the legislature provided that any municipal traffic ordinance "substantially similar" to the minor Revised Code traffic offenses listed would not bar the sealing of conviction records and those "substantially similar" to the more serious Revised Code traffic violations enumerated would bar the sealing conviction records. Hence, we determine that the "substantially similar" test was not intended to apply to all violations of municipal ordinances, but only to violations of municipal traffic ordinances.

If we were to find otherwise, we would have to engage in absurd comparisons. We would have to decide whether, for example, inoperable fixtures are more substantially similar to resisting an officer or to tampering with an odometer. Or we would have to decide whether housing violations are, for example, as dangerous as operating an unsafe vehicle or as dangerous as drag racing.

■ We believe that the germane issues in this case are whether a conviction for a housing violation constitutes "an offense" within the meaning of the statute defining a "first offender," and, if so, whether the housing violation was a minor misdemeanor. Although R.C. 2953.31 does not define the term "offense," it is defined in R.C. 2935.01(D). It provides that the term "offense," "except where the context specifically indicates otherwise, includes felonies, misdemeanors, and violations of ordinances of municipal corporations and other public bodies authorized by law to adopt penal regulations." The housing ordinances in question are part of the Dayton Municipal Ordinances; thus, violations of the housing ordinances are violations of the ordinances of a municipal corporation. Furthermore, the context of the definition of a "first offender" does not specifically indicate (inasmuch as a context can specifically indicate) that convictions of housing violations are not "offenses." Therefore, we conclude that housing violations are "offenses" for purposes of determining whether an individual is a "first offender."

■ Next, we must determine whether the housing violation convictions in this case were minor misdemeanors. The legislature specifically excluded, in its amended definition, minor misdemeanors from qualifying as convictions for purposes of determining whether an individual is a "first offender." Section 93.05(B) of the Dayton Housing Ordinances provides that any person who fails to comply with an order served pursuant to that section shall be deemed guilty of a misdemeanor. Section 93.05 then refers the reader to Section 93.99. Paragraph (A) of Section 93.99 provides that a violation of Sections 93.02 through 93.05, 93.06 through 93.46(A), and 93.47(D) through 93.52, and 93.60 through 93.69, shall constitute a misdemeanor of the third degree. Paragraph (B) of that section designates which violations are minor misdemeanors. It provides that a violation of the requirements of Sections 93.46(B), (C), (D), or (E), or 93.47(A), (B), or (C) shall constitute a minor misdemeanor. Sheibenberger violated Section 93.05, which is a misdemeanor in the third degree. Because Sheibenberger's housing

violation convictions do not constitute minor misdemeanors, we find that they bar the sealing of his conviction record. Accordingly, we overrule the assignment of error.

## II

█ In his second assignment of error, Sheibenberger argues that his interest in having the records of his dismissed charges sealed is at least equal to the legitimate needs of the government in maintaining those records. Sheibenberger further asserts that the municipal court erroneously weighed the needs of a prospective employer, Wright Patterson Air Force Base, against his own in considering whether he was entitled to have the records of the dismissed charge sealed.

The sealing of records in an action that has been dismissed is governed by R.C. 2953.52 instead of R.C. 2953.32, which governs the sealing of conviction records. R.C. 2953.52(A)(1) provides that "[a]ny person * * * who is the defendant named in a dismissed complaint, indictment, or information, may apply to the court for an order to seal his official records in the case." In deciding whether the records should be sealed under R.C. 2953.52, the court must consider whether the indictment or information in the case was dismissed, whether criminal proceedings are pending against the person, and the prosecutor's reasons (if any) against granting the application, and weigh the interests of the person in having the records sealed against the legitimate needs (if any) of the government to maintain those records. R.C. 2953.52(B)(2). Unlike in R.C. 2953.32, R.C. 2953.52 does not require the applicant to be a "first offender." If the court determines that the indictment or information was dismissed, that no criminal proceedings are pending against the person, and that the interests of the individual in having the records sealed are not outweighed by any legitimate governmental need to maintain the records, the court shall order that all records pertaining to the case be sealed. R.C. 2953.52(B)(3).

We determine that although the trial court applied the correct test under the statute, the trial court erroneously relied on *Pepper Pike v. Doe* (1981), 66 Ohio St.2d 374, 20 O.O.3d 334, 421 N.E.2d 1303, in determining what weight should be accorded to the parties' interests. The Supreme Court in *Doe* held that "[t]ypically, the public interest in retaining records of criminal proceedings, and making them available for legitimate purposes, outweighs any privacy interest the defendant may assert." *Id.* at 377, 20 O.O.3d at 336, 421 N.E.2d at 1306. *Doe* concerned judicial, as opposed to statutory, sealing of records in a dismissed action. At that time, there was no statutory section which allowed an individual's records in a dismissed action to be sealed. R.C. 2953.52, which was enacted in 1984, now provides a statutory basis for the sealing of records in a dismissed

action. Unlike in *Doe,* there is no indication in R.C. 2953.52 that the balance should be tipped in favor of the government.

Additionally, the balancing test in R.C. 2953.52 is identical to that found in R.C. 2953.32, which governs the sealing of conviction records. R.C. 2953.52 was added at the same time the legislature amended R.C. 2953.32. Under the prior version of 2953.32, as under the present version, courts were to balance the parties' interests to determine whether the applicant was entitled to have his conviction record sealed. In balancing the parties' interests, the courts applied the holding in *Doe*—that typically the government's interest in retaining the records outweighs any privacy interest asserted by the applicant.

However, after that section was amended in 1984, the Supreme Court seemed to recognize that *Doe* no longer would be controlling because it determined that the revised version "places a greater emphasis on the individual's interest in having the record sealed." *State v. Bissantz* (1988), 40 Ohio St.3d 112, 532 N.E.2d 126; See, also, Chief Justice Moyer's concurrence in part and dissent in part in *State v. Greene* (1991), 61 Ohio St.3d 137, 573 N.E.2d 110. The court found that the statute placed a greater emphasis on the individual's interest in having the records sealed because the prior version of R.C. 2953.32 required that the trial court first find, among other things, that the sealing of an individual's conviction was consistent with the public's interest.

We believe that the legislature likewise intended that there be an emphasis on the individual's interest in having his or her record sealed in enacting R.C. 2953.52, which is very similar to the revised version of R.C. 2935.32. Therefore, we determine that the trial court is not to tip the balance in favor of the government when it is weighing the parties' relative interests. The court is to approach the parties' interests initially from an equal basis. Hence, we reverse the trial court's decision and remand this issue to the trial court for a new hearing.

We note that we are not making any judgment at this time as to the outcome of that hearing. The trial court has considerable discretion in determining and weighing the interests of the respective parties. *State v. S.R.* (1992), 63 Ohio St.3d 590, 596, 589 N.E.2d 1319, 1324. As the court in *State v. Grove* (1986), 29 Ohio App.3d 318, 320, 29 OBR 418, 419–420, 505 N.E.2d 297, 298–299, wrote, it is the trial court that is "in the best position to determine whether the appellant was dangerous and whether the interests of the state in maintaining the records of the case outweighed appellant's interest in having the record sealed." This issue is reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

The judgment of the trial court regarding Sheibenberger's application to have his conviction sealed is affirmed on other grounds, and the judgment of the trial

court as to Sheibenberger's application to have his dismissed charges record sealed is reversed and remanded.

*Judgment accordingly.*

WOLFF and FAIN, JJ., concur.